| | |
|---|---|
| CARL LYNN WILLIAMS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| BRAD PERRITT, ) | |
| ) | |
| Respondent. ) | |

On November 15, 2013, Carl Lynn Williams ("Williams"), a state inmate proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pet. [D.E. 1]. Williams seeks leave to proceed in forma pauperis [D.E. 2]. On January 16, 2014, Williams filed a "motion for consideration of new law and newly discovered evidence" [D.E. 4]. The court now conducts its initial review pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts. Under Rule 4, the court must dismiss any petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." Rule 4, Rules Governing Section 2254 Cases. The court may sua sponte dismiss a section 2254 petition without notice if "it is indisputably clear from the materials presented to the district court that the petition is untimely and cannot be salvaged by equitable tolling principles or any of the circumstances enumerated in [section] 2244(d)(1)." Hill v. Braxton, 277 F.3d 701, 707 (4th Cir. 2002); see Eriline Co. S.A. v. Johnson, 440 F.3d 648, 656 (4th Cir. 2006). As explained below, the court dismisses Williams's petition as untimely.

I.

Before addressing the merits, the court briefly recites the crime which produced Williams's conviction and sentence.

> The evidence, viewed in the light most favorable to the State, tended to show that [Williams] and his friend David Beal went to a pool hall Saturday evening, 19 May 1990. There they met [Williams]'s cousin Lee Carver and a man named William Fowler, whom Beal agreed to drive home in exchange for ten or fifteen dollars. Beal, accompanied by [Williams], Fowler, and Mattie Robeson, who was with Fowler, drove to Fowler's sister's house. Carver followed in his own car. Around fifteen minutes after their arrival, Mitchell McNeill arrived.
>
> Shortly afterwards an altercation arose between a neighbor and Fowler and McNeill. When calm was restored, everyone except the neighbor went back inside and talked. Beal asked McNeill to get Fowler to pay for his ride, but Fowler had gone to sleep. McNeill said he would give Beal the money when he got paid. [Williams] and Beal then left the house.
>
> Outside, Beal stated he had not been paid, and [Williams] responded, "Well, they ain't paid you your money, looks like we will have to put a cap in them." To "cap" someone, Beal explained, meant to shoot him.
>
> Mattie Robeson testified that McNeill went to the back bedroom to use the telephone, and Fowler went into another bedroom. Fowler went to answer the door, and [Williams] entered with Carver and Beal. Mattie went into the den to watch television. A few minutes later Fowler came to the den door and asked Mattie if she was getting sleepy. She said she was, and Fowler said Beal, Carver, and [Williams] were getting ready to leave "in a few minutes." As soon as Fowler was out of the doorway, Mattie heard two gunshots. She shut the den door and hid in the closet. She then heard McNeill say twice, "Man, I didn't have nothing to do with it," and the sound of two more shots. When she stuck her head out the door she saw Beal, [Williams], and Carver walking out the door. [Williams] was carrying a little gun, and Carver was carrying a shotgun. When she heard cars driving away, she went to a neighbor's house and called the police.
>
> An autopsy of Mitchell McNeill revealed that he died from a shot to the aorta. A second bullet grazed his hand and lodged in his abdomen. The forensic pathologist who performed the autopsy opined that the second shot was fired while McNeill was in a crouched or defensive position or that he was shot while falling. Fowler had also been shot twice—in the heart and in the back of the head. The bullets were recovered from the bodies and examined by an S.B.I. agent. The agent's written report, to which [Williams] and the State stipulated, stated that all four bullets had been fired

2

from the same .32 caliber revolver. Officers found the revolver in a sofa at [Williams]'s trailer two days after the murders.

The police questioned [Williams] on 21 May 1990. He gave a statement and responded to police questioning, first denying he was present when the victims were shot, then admitting he had been with Carver but stating that he had not fired any shots. Although Beal testified it was [Williams] who said he was going to "cap" the victims because Beal had not been paid, [Williams] attributed these remarks, like the killing itself, to Carver. [Williams] admitted he had put the gun under the seat of Beal's car earlier in the evening and that he had told Carver its location.

State v. Williams, 333 N.C. 719, 721–22, 430 S.E.2d 888, 889–90 (1993).

The jury convicted Williams of two counts of first-degree murder, and on October 16, 1991, the trial court sentenced Williams to consecutive terms of life imprisonment. Williams, 333 N.C. at 721, 430 S.E.2d at 889; see Pet. 1. Williams appealed, and on June 4, 1993, the North Carolina Supreme Court found no error. Williams, 333 N.C. at 733, 430 S.E.2d at 895, cf. Pet. 2 (describing direct appeal to North Carolina Court of Appeals and Supreme Court). Williams did not file a petition for certiorari in the United States Supreme Court. Pet. 3.

Williams filed a motion for appropriate relief ("MAR") in Cumberland County Superior Court, which denied the motion on an unknown date. Pet. 3. On October 24, 2013, Williams filed a petition for writ of habeas corpus in the North Carolina Court of Appeals, which denied the petition on October 28, 2013. Pet. 4; [D.E. 1-1] 1. On the same date, the North Carolina Supreme Court denied Williams's appeal. Pet. 4; [D.E. 1-1] 2.

Williams signed his section 2254 petition on November 12, 2013, and filed it in this court on November 15, 2013. Pet. 15. Williams asserts four claims all arising out of his contention that the indictment against him was defective. Pet. 5–10.

II.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires that any application for a writ of habeas corpus filed by a person in custody pursuant to the judgment of a state court be filed within one year of the latest of

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)–(D); see also Frasch v. Peguese, 414 F.3d 518, 521 (4th Cir. 2005).

The limitation period under section 2244(d)(1) is tolled during the time in which "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); see Taylor v. Lee, 186 F.3d 557, 560 (4th Cir. 1999). An application for post-conviction or other collateral review is pending from initial filing in state court until final disposition in the highest state court. Taylor, 186 F.3d at 560–61. The period between a petitioner's conviction becoming final and that petitioner's filing a state application for post-conviction relief counts against the one-year limitation period. See, e.g., Holland v. Florida, 560 U.S. 631, 635–39 (2010); Hernandez v. Caldwell, 225 F.3d 435, 438 (4th Cir. 2000); Harris v. Hutchinson, 209 F.3d 325, 327 (4th Cir. 2000). The statutory period then resumes after the state highest state court denies post-conviction relief to a petitioner. See, e.g., Holland, 560 U.S. at 638; Hernandez, 225 F.3d at 438.

4

Subsection (A) of section 2244(d)(1) requires the court to determine when petitioner's judgment became final. See 28 U.S.C. § 2244(d)(1)(A). Because Williams did not seek further direct review to the United States Supreme Court, his conviction became final no later than September 2, 1993, 90 days after the North Carolina Supreme Court affirmed his conviction. See, e.g., Clay v. United States, 537 U.S. 522, 527 (2003). Thus, Williams's conviction became final before the AEDPA's effective date, and the one-year statute of limitations began to run on April 24, 1996, which is the AEDPA's effective date. Brown v. Angelone, 150 F.3d 370, 375 (4th Cir. 1998). Therefore, absent a later date on which Williams's claims accrued, Williams's one-year period of limitation began to run on April 24, 1996, and expired 365 days later, on April 24, 1997. Williams's postconviction filings did not reopen his time for filing a habeas petition. Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000). Accordingly, absent equitable tolling, Williams's petition is untimely.

Under AEDPA, the one-year statute of limitations is subject to equitable tolling. Holland, 560 U.S. at 645–49. Equitable tolling applies only if a petitioner shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Id. at 649 (quotation omitted); see Green v. Johnson, 515 F.3d 290, 304 (4th Cir. 2008). A court may allow equitable tolling under section 2244 "in those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Green, 515 F.3d at 304 (quotation omitted); see Jackson v. Kelly, 650 F.3d 477, 491–92 (4th Cir. 2011). "[A]ny invocation of equity to relieve the strict application of a statute of limitations," however, "must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." Harris, 209 F.3d at 330.

5

Williams acknowledges that his petition is untimely, but asserts he "is a layman at law and was not advised by his court appointed attorneys of the one-year statute of limitations." Pet. 13. Williams also asserts that two recent Supreme Court cases, Lafler v. Cooper, 132 S. Ct. 1376 (2012) and Missouri v. Frye, 132 S. Ct. 1399 (2012), warrant tolling. See Mot. [D.E. 4].

Williams has not demonstrated diligent pursuit of his rights or any extraordinary circumstance that prevented him from timely filing his petition. Unfamiliarity with the legal process, lack of representation, and even illiteracy do not constitute grounds for equitable tolling. See, e.g., United States v. Sosa, 364 F.3d 507, 512–13 (4th Cir. 2004); Harris, 209 F.3d at 330–31 (collecting cases). Moreover, Williams's reliance on Lafler and Frye—each issued over a year before Williams signed his petition—is misplaced. See, e.g., In re Graham, 714 F.3d 1181, 1182–83 (10th Cir. 2013) (per curiam); In re Perez, 682 F.3d 930, 932–34 (11th Cir. 2012); In re King, 697 F.3d 1189 (5th Cir. 2012) (per curiam); Hare v. United States, 688 F.3d 878, 879–80 (7th Cir. 2012). Accordingly, Williams's petition is dismissed as time-barred.

### III.

In sum, the court DISMISSES petitioner's application for habeas corpus relief [D.E. 1] as time-barred. The court DENIES petitioner's motion [D.E. 4] and DENIES a certificate of appealability. See 28 U.S.C. § 2253(c). The clerk shall close the case.

SO ORDERED. This 25 day of June 2014.

JAMES C. DEVER III
Chief United States District Judge